**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,           )<br>                                    )<br>          Plaintiff,                )<br>                                    )<br>     v.                             )<br>                                    )<br> RENE ROBERT MONTOYA,                )<br>                                    )<br>          Defendant.                )<br> _____) | No. 07-04062M-001-PCT-MEA<br><br>ORDER |

        On March 8, 2007, Defendant was arrested in Flagstaff, Arizona, by United States Postal Inspection Service officers, for placing a fake bomb in his mailbox in a community postal box in his own neighborhood. The "bomb" was actually comprised of three road flares taped together to simulate dynamite with a commercial grade dynamite fuse inserted.  On one of the flares the words "NEX[T] TIME-BACK OFF" were written.  Defendant initially disclaimed any knowledge as to who might have placed the bomb in the box, but he suggested the names of several acquaintances who might have had a motive to do so. Ultimately, after further investigation, Defendant confessed to placing the fake bomb in a misguided attempt to obtain sympathy from his estranged wife.  On March 9, 2007, due to the unavailability of this Court, Defendant received an initial appearance before a Coconino County Superior Court Judge and was formally charged,

by means of a complaint, with violating 18 U.S.C. § 1038. Defense counsel was conditionally appointed and Defendant was temporarily detained pending a preliminary hearing and detention hearing before this Court. On March 14, 2007, the Court reaffirmed the prior appointment of counsel and conducted Defendant's preliminary hearing and detention hearing. The Court found probable cause to support the charge and Defendant was bound over for further proceedings in District Court.

At the conclusion of the detention hearing, Defendant's counsel requested Defendant be released to the custody of his sister, who resides in Flagstaff, which was the disposition also recommended by Pretrial Services. Defendant argued he is not a flight risk and, because he is not charged with a "crime of violence" as that term is defined in the Bail Reform Act, he may not be detained as a danger to the community. Furthermore, Defendant argued the underlying facts of the offense charged do not reflect Defendant's dangerousness because the "bomb" was fake and placed in Defendant's own mailbox. The government requested detention based upon Defendant's danger to his estranged wife, Defendant's brother-in-law, and the community in general. The government also urged the Court to order Defendant's detention based upon a risk of flight. The Court took the matter under advisement.

**THE BAIL REFORM ACT**

Congress enacted the Bail Reform Act in 1984 in response to criticism that the prior law did not provide judges with sufficient authority to make decisions regarding the

pretrial release of defendants who posed serious risks of flight or danger to the community. In its commentary to the Act Congress stated: "... it is intolerable that the law denies judges the tools to make honest and appropriate decisions regarding the release of [dangerous] defendants." Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 5 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3188. In amending the bail statutes "Congress hoped to give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released." United States v. Salerno, 481 U.S. 739, 744, 107 S. Ct. 2095, 2099 (1987).

> The Bail Reform Act of 1984, 18 U.S.C. §§ 3141, et seq., requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. []. *Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor*. [] On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community. []

United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991) (internal citations omitted and emphasis added). The Act has been amended by Congress on various occasions, such as in 2003 and 2004, see United States v. Holmes, 438 F. Supp. 2d 1340, 1347 n.6 (S.D. Fla. 2005), and most recently by the Adam Walsh Child Protection and Safety Act of 2006, Public Law Number 109-

-3-

248, 120 Stat. 587.

Section 3142(a) of the Act sets forth the analysis the Court must undertake regarding a defendant's release or detention prior to trial. The Court must first determine whether to release the defendant on his personal recognizance or on an unsecured appearance bond. If not so released, the Court must consider release based upon the conditions enumerated in subsection 3142(c). If the defendant is found to be a flight risk or a danger to the community, the conditions of release may include a bond of an amount sufficient that the defendant, being unable to post it, is "de facto" detained. See United States v. Fidler, 419 F.3d 1026, 1028 (9th Cir. 2005).[1]

---

[1]
> Several other circuits have addressed the apparent violation of § 3142(c)(2) that arises when, as in Fidler's case, a defendant is granted pretrial bail, but is unable to comply with a financial condition, resulting in his detention. It may appear that detention in such circumstances always contravenes the statute. We agree, however, with our sister circuits that have concluded that this is not so. [] *These cases establish that the de facto detention of a defendant under these circumstances does not violate § 3142(c)(2) if the record shows that the detention is not based solely on the defendant's inability to meet the financial condition, but rather on the district court's determination that the amount of the bond is necessary to reasonably assure the defendant's attendance at trial or the safety of the community.* This is because, under those circumstances, the defendant's detention is "not because he cannot raise the money, but because without the money, the risk of flight [or danger to others] is too great." Jessup, 757 F.2d at 389.

United States v. Fidler, 419 F.3d 1026, 1028 (9th Cir. 2005).

-4-

Section 3142(g) specifies the factors the Court must consider when determining if any set of conditions will assure the defendant's future appearances and the safety of the community:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed or involves a narcotic drug;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g) (2000 & Supp. 2006).

A detention order must include "written findings of fact and a written statement of the reasons for the detention."

-5-

Id. § 3142(i)(1).  "Rule 9(a)(1) of the Federal Rules of Appellate Procedure further requires that the district court 'state in writing, or orally on the record, the reasons for an order regarding the release or detention of a defendant in a criminal case.'" United States v. Dowell, 44 Fed. App. 386, 388 (10th Cir. 2002).  See also United States v. Fernandez-Alfonso, 816 F.2d 477, 478 (9th Cir. 1987).

**FINDINGS OF FACT**

At the detention hearing the Pretrial Services report indicated Defendant was born and raised in Flagstaff. Defendant has family members who reside in Flagstaff, one of whom, his sister, has agreed to act as a third-party custodian for Defendant. Defendant has been employed full-time by the Parks Department of the City of Flagstaff for seven years. Defendant owns a mobile home near where the fake bomb was placed.

However, in 1998 Defendant was convicted in Flagstaff City Court on one count of domestic violence against his estranged wife. Defendant and his wife have been separated for two years. Defendant has had no relationship with his father, who resides in Flagstaff, since Defendant was kicked-out of the father's home. Defendant and his estranged wife have two children, who live in Cottonwood, Arizona, with their mother. The mother does not allow Defendant to have contact with these children. Defendant also has a sixteen-year-old daughter from a prior relationship, who lives in Phoenix with her mother and Defendant has no contact with this daughter.

Defendant has been depressed since he and his wife separated and he has been taking prescribed antidepressant medication for the past year. Defendant received professional counseling for one month about six to eight months ago. Defendant attempted to shoot himself on December 31, 2006, while consuming alcohol, but the gun misfired.

Testimony by Postal Inspector Rivas indicated the fake bomb was placed in Defendant's own mailbox and found by the route letter-carrier. While the carrier initially believed the device to be a live dynamite bomb, upon further inspection the bomb was determined to be a fake. Defendant cooperated in the ensuing investigation, consenting to multiple interviews by law enforcement. Although he initially denied involvement in the placement of the fake bomb, upon further questioning, Defendant waived his Miranda rights and confessed to his involvement in the alleged crime. Defendant indicated in a written statement that his motive in devising the fake bomb and placing it in his mailbox was to make his estranged wife speak with him. Defendant further stated: "I guess I still need more help with a doctor."

Postal Inspector Rivas further testified that, during his confession, Defendant said he had thoughts about building a bomb from propane tanks and using it in some unspecified manner involving his brother-in-law. Defendant's brother-in-law lives in the same mobile home park as Defendant and Defendant dislikes his brother-in-law. The Postal Inspector further testified there was no evidence to indicate Defendant ever took any steps in furtherance of this ideation. Defendant lawfully had three

-7-

rifles in his home and lawfully kept a handgun in his vehicle.

To his credit, Defendant has extensive ties to the community, but Defendant is clearly suffering from mental instability which will only be aggravated by his probable loss of employment. Based upon these undisputed facts the Court concludes it would be inappropriate to release Defendant on his own recognizance or on an unsecured bond. Therefore, the Court must consider defendant's possible pretrial release on conditions and possible detention.

### DEFENDANT'S DANGEROUSNESS

Defendant asserts that, because the crime charged is not a *per se* "crime of violence" as that term is defined in section 3142(f)(1) and section 3156(a)(4), he may not be detained pursuant to the Bail Reform Act based merely on a finding that he is a danger to the community. The term "crime of violence" is defined, in relevant part, as "*an offense* that has [as] an *element of the offense* the use, attempted use, or threatened use of physical force against the person or property of another ..." or "any other offense that is a *felony* and that, *by its nature, involves* a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. ..." 18 U.S.C. § 3156(a)(4)(A) & (B) (2000 & Supp. 2006) (emphasis added). See also id. § 16.

The federal courts do not agree on whether a defendant may be detained solely on the basis of their dangerousness if the charged crime does not meet the criteria warranting a

-8-

detention hearing pursuant to section 3142(f).  See United States v. Singleton, 182 F.3d 7, 10-11 (D.C. Cir. 1999); United States v. Holmes, 438 F. Supp. 2d 1340 (S.D. Fla. 2005); United States v. Gloster, 969 F. Supp. 92, 95 & n.5 & n.6 (D.D.C. 1995). Compare United States v. Byrd, 969 F.2d 106, 109-10 (5th Cir. 1992), with United States v. Doe, 960 F.2d 221, 223-24 (1st Cir. 1992).

The respective views can be summarized as follows:

1. Any offense (felony or misdemeanor) which has as an "element" the "use, attempted use, or threatened use of physical force" against the person or property of another is a "crime of violence" and no further analysis is required. See Singleton, 182 F.3d at 11.

2. A felony which by its "nature" involves a substantial risk that physical force may be used against the person or property of another in the course of committing the offense, is a crime of violence. The courts are to use a "categorical" approach in determining if a crime is a *per se* crime of violence, looking only to the intrinsic nature of the offense as it is defined by statute and not to the facts surrounding the alleged offense. See id. at 11-12; United States v. Johnson, 399 F.3d 1297, 1301-02 (11th Cir. 2005). While the courts which follow the categorical approach rule are in general agreement as to the procedure to be followed, the results may differ in nearly identical cases. Compare United States v. Dillard, 214 F.3d 88, 97 (2d Cir. 2002), with Singleton, 182 F.3d at 16-17.

3. It is not necessary for the defendant to be charged with a *per se* "crime of violence," only that the charge "involve" a crime of violence or any one or more of the section 3142(f) factors, and the Court may look to the underlying facts regarding the commission of the alleged crime to determine if the crime is a "crime of violence." See Byrd, 969 F.2d at 110; Holmes, 438 F. Supp. 2d at 1350-51.  In United States v. Le, an unpublished opinion, the District Court premised this determination on its interpretation of 18 U.S.C. § 3142(f)(1)(A), stating: "Had Congress intended to limit the court's consideration to the charged offense, it would have said so."  2003 WL 21659657 (D. Kan. 2003).

The Ninth Circuit Court of Appeals has not made a definitive statement regarding this issue to guide the Court. In United States v. Twine the Ninth Circuit stated: "We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based *solely* on a finding of dangerousness. This interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1) and (2)."  344 F.3d 987, 987-88 (9th Cir. 2003) (emphasis added) (citing Byrd, 969 F.2d at 109-10,[2] United States

---

[2] A hearing can be held only if one of the six circumstances listed in (f)(1) and (2) is present; detention can be ordered only after a hearing is held pursuant to § 3142(f). Detention can be ordered, therefore, only "in a case that involves" one of the six circumstances listed in (f), and in which the judicial officer finds, after a hearing, that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. The

-10-

v. Ploof, 851 F.2d 7 (1st Cir. 1988), and United States v. Himler, 797 F.2d 156 (3d Cir. 1986)), reh'g en banc denied, 362 F.3d 1163 (2004).  However, the Ninth Circuit panel's conclusion in Twine is subject to interpretation; on a motion for an en banc rehearing of the matter, the parties were ordered to brief the issue of "[w]hether the Bail Reform Act provides for a detention hearing in a case that 'involves a crime of violence' as distinguished from a case where the 'charged offense' is a crime of violence.[]."  See United States v. Twine, 353 F.3d 690 (9th Cir. 2003).  Given the potentially inconclusive nature of the Ninth Circuit's opinion in Twine, the Court concludes the appropriate analysis is the analysis stated in Byrd, i.e., the Court must look both at the elements of the crime charged and at the factual predicate for the crime when determining if the accused is charged with committing an act of "violence."

---

> First and the Third Circuits have both interpreted the Act to limit detention to cases that involve one of the six circumstances listed in (f). []. Both Circuits held that a person's threat to the safety of any other person or the community, in the absence of one of the six specified circumstances, could not justify detention under the Act. There can be no doubt that this Act clearly favors nondetention. It is not surprising that detention can be ordered only after a hearing; due process requires as much. What may be surprising is the conclusion that even after a hearing, detention can be ordered only in certain designated and limited circumstances, irrespective of whether the defendant's release may jeopardize public safety. Nevertheless, we find ourselves in agreement with the First and Third Circuits: a defendant's threat to the safety of other persons or to the community, standing alone, will not justify pre-trial detention.

This conclusion is supported by decisions of the Ninth Circuit Court of Appeals in the sentencing context. In <u>United States v. Serna</u>, 435 F.3d 1046, 1047 (9th Cir. 2006), and <u>United States v. Young</u>, 990 F.2d 469, 471-72 (9th Cir. 1993), which examine the United States Sentencing Commission Guidelines' definition of "crime of violence," the Ninth Circuit instructed the District Courts to look first to the elements of the offense and then to the actual conduct underlying the charge, to determine if the crime of conviction was a "crime of violence."[3] <u>Cf.</u> also <u>United States v. Reina-Rodriquez</u>, 468 F.3d 1147, 1152-55 (9th Cir. 2006) (analyzing whether the defendant's prior conviction was a "crime of violence" using both the categorical approach and the "modified categorical" method in the context of a sentencing guidelines case); <u>Ortega Mendez v. Gonzales</u>, 450 F.3d 1010, 1021 (9th Cir. 2006) (concluding battery was not a "crime of violence" as that term is defined by 18 U.S.C. § 16, as referenced by the Immigration and Naturalization Act codified at 8 U.S.C. § 1227(a)(2)(E)(i), for the purpose of determining whether the petitioner was deportable).

---

[3] The Court is mindful that the use of identical words in different statutory contexts may result in different meanings. <u>Cf. Singleton</u>, 182 F.3d at 11 n.5 (noting a "material difference" in the language of the sentencing guidelines as compared to the Bail Reform Act); <u>United States v. Velazquez-Overa</u>, 100 F.3d 418, 420-21 (5th Cir. 1996) (stressing the importance of the phrase "by its nature" in 18 U.S.C. § 16 as incorporated into U.S.S.G. § 2L1.2, for which the court adopted a categorical approach); <u>United States v. Allen</u>, 409 F. Supp. 2d 622 (D. Md. 2006). It has been suggested that, although they utilize the same language, i.e., "crime of violence," the definition of a crime of violence in a detention proceeding should be broader than in a sentencing context. <u>See United States v. Campbell</u>, 28 F. Supp. 2d 805, 809 (W.D.N.Y. 1998).

Defendant is accused of violating 18 U.S.C. § 1038,[4] which criminalizes the making of false statements and perpetrating hoaxes. Defendant is essentially accused of manufacturing a fake bomb and placing it in his own mailbox to elicit sympathy from his estranged wife. There is no element of

---

[4] This section, enacted in 2004, provides, in relevant part:

> Whoever engages in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of chapter 2, 10, 11B, 39, 40, 44, 111, or 113B of this title, ... shall--
> (A) be fined under this title or imprisoned not more than 5 years, or both;
> ...

The government's theory of prosecution is that the underlying predicate offense is Chapter 40, section 844(e) or, in the alternative section 844(f)(1), which provide:

> Whoever, through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.
> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance, shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

-13-

this crime which involves the "use, attempted use, or threatened use of physical force" against the person or property of another because it was a hoax. Cf. United States v. Evans, ___ F.3d ___, 2007 WL 505270, at *7 (11th Cir.) (concluding a violation of section 1038 is not a "serious violent felony," as that term is defined in 18 U.S.C. § 3559, because it does not "by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense" (emphasis removed)).

The Court concludes that, even if a violation of 18 U.S.C. § 1038 is not *per se* a crime of violence as that term is defined in 18 U.S.C. § 3156(a)(4), the plain language of the detention statute instructs the Court to consider not only whether the crime charged is a *per se* crime of violence, but whether the charged crime *involves* a crime of violence, and also the nature and circumstances of the offense charged, when determining if a defendant is a danger to the community and should be detained pending trial. See, e.g., Holmes, 438 F. Supp. 2d at 1351;[5] United States v. Bess, 678 F. Supp. 929, 933 (D.D.C. 1988) ("It is the Court's independent application of the

---

[5]
...this Court concludes that dangerousness as a grounds for detention is not excluded in cases involving detention hearings brought under (f)(2). This conclusion is based on a plain reading of the statute's unambiguous language and structure, the Act's legislative history, and the *Johnson* and *Singleton* court's analyses. This Court is convinced that Congress intended that dangerousness be considered in all instances whether arising under subsection (f)(1) or (f)(2).

-14-

factors listed in § 3142(g), in light of all the evidence of defendant's dangerousness, that determines whether pretrial detention is appropriate"). Cf. Byrd, 969 F.2d at 110 ("In other words, it is not necessary that the charged offense be a crime of violence; only that the case involve a crime of violence or any one or more of the § 3142(f) factors. *But the proof of a nexus between the non-violent offense charged and one or more of the six § 3142(f) factors is crucial.*" (emphasis added)). United States v. Rodriguez, 950 F.2d 85, 88 (2d Cir. 1991) (stating that the district court must not reject evidence of dangerousness solely on the absence of a nexus between drug charges and the danger posed); United States v. Quartermaine, 913 F.2d 910, 917 (11th Cir. 1990) (defendant's acts of domestic violence supported finding of dangerousness where defendant was being prosecuted for an unrelated charge).

The charged criminal acts, i.e., manufacturing a fake bomb and placing the device in a mailbox to be found by a United States Postal Service employee, which Defendant knew could not result in injury to another or to himself, is not a "crime of violence," and the acts alleged do not *involve* a crime of violence. There is no evidence of an intent by Defendant to harm another individual by perpetrating the act charged. The "nature and circumstances" of the offense as it is charged in this matter, i.e., violation of section 1038 by manufacturing a fake bomb and placing it in the defendant's own mailbox, do not indicate any act of violence as contemplated by the Bail Reform Act.

**CONCLUSION**

The Court concludes that the complaint charging a violation of Title 18, United States Code, Section 1038 does not charge a per se "crime of violence" as that term is defined in the Bail Reform Act. Looking to the underlying evidence supporting the charge itself, the Court further concludes the charge does not "involve" a crime of violence. While there are certain inferences of Defendant's "dangerousness", i.e., his 1998 domestic violence conviction and ideation regarding a propane tank bomb and dislike for his brother-in-law, these inferences do not arise to clear and convincing evidence of dangerousness. Assuming the inferences arose to the level of clear and convincing evidence, the holding in Twine would preclude detention based solely on this finding of dangerousness.

Due to Defendant's mental instability the Court finds, by a preponderance of the evidence, that Defendant is a flight risk. However, the Court further finds that the risk can be attenuated by releasing Defendant on conditions to be set by the Court.

Accordingly,

**IT IS ORDERED** that Defendant shall be released on conditions to be set by the Court.

DATED this 15th day of March, 2007.

_____
Mark E. Aspey
United States Magistrate Judge

-16-